1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RALPH GRIFFITH,                                No. C-02-05859 MMC

            Petitioner,                        **ORDER DENYING LETTER PETITION**

    v.

UNITED STATES PAROLE
COMMISSION,

            Respondent.
_____/

        Before the Court is a letter petition, filed December 18, 2002, by which petitioner Ralph

Griffith ("petitioner") seeks to vacate certain action taken by the United States Parole

Commission ("Parole Commission").  For the reasons set forth below, the petition is DENIED.


                              **BACKGROUND**

        Petitioner was convicted of bank robbery in 1986 in the Middle District of Tennessee.

(See Sikkema Cert. Ex. A.)  Petitioner was sentenced to concurrent 20-year and 25-year

prison sentences, resulting in an aggregate 25-year sentence.  (See id. Ex. B and Ex. C at 3.)

        Petitioner began serving his sentence on January 15, 1986, at which time he was

credited with 278 days of time served.  (See id. Ex. C at 9.)  On October 20, 1999, the Bureau

of Prisons mandatorily released petitioner, pursuant to 18 U.S.C. § 4163, with 3826 days

1   remaining on his sentence.  (See id. Ex. D.)  Petitioner's mandatory release contained several

2   conditions, including (1) that he not leave the Northern District of California without the

3   permission of his probation officer, and (2) that he not violate any law.  (See id. at 2.)

4       In 2001, petitioner contacted the United States Probation Office in Honolulu, Hawaii,

5   seeking to "turn himself in."  (See id. Ex. E.)  Petitioner admitted that his trip to Hawaii had not

6   been authorized by his probation officer and that, while in Hawaii, he had been convicted of

7   driving under the influence.  (See id.)  A warrant for petitioner's arrest for violating the

8   conditions of his mandatory release was issued and executed on August 24, 2001.  (See id.

9   Ex. C at 3, and Exs. F and G.)

10      On January 8, 2002, petitioner signed the Parole Commission's proposal for an

11  expedited revocation determination, by which petitioner waived his right to a hearing on

12  revocation of his mandatory release, and accepted responsibility for the conduct charged

13  against him in the warrant application.  (See id. Ex. I.)  Pursuant to said agreement, petitioner

14  also agreed to revocation of his mandatory release, forfeiture of credit for time spent on

15  mandatory release, and to reparole after service of 12 months ending on August 24, 2002.

16  (See id.)  Petitioner further agreed that his reparole date would be contingent on his

17  "maintaining a record of good conduct in the institution up to the date of release and an

18  acceptable release plan."  (See id.)  Pursuant to said agreement, the Parole Commission

19  revoked petitioner's mandatory release on January 23, 2002.  (See id. Ex. J.)

20      On August 20, 2002, the Parole Commission retarded petitioner's reparole date by 60

21  days as a result of petitioner's parole plan being denied and his refusal to submit a new plan.

22  (See id. Exs. K and L.)  On October 17, 2002, the Parole Commission retarded petitioner's

23  parole date an additional 30 days as a result of his having been found by a Disciplinary

24  Hearing Officer to have violated "the rules of the institution," in particular, for engaging in

25  "insolence towards a staff member."  (See Sikkema Decl. Ex. M.)

26      Petitioner was reparoled on November 22, 2002.  (See id. at Ex. N.)  The Parole

27  Commission set his parole expiration date at February 13, 2012, for a total term of 3370

28  days, and ordered him to remain within the Northern District of California until that date.  (See

2

1   id.)

2       On December 18, 2002, petitioner filed the instant motion to vacate, set aside, or

3   modify his sentence pursuant to 28 U.S.C. § 2255, arguing that the Parole Commission had

4   improperly "resentenced [him] to a new 10-year sentence with a new two-thirds date and a

5   special 10-year parole."  (See Petition at 1.)

6       The above-titled action was reassigned to the undersigned on June 23, 2005.[1]

7                                       **DISCUSSION**

8       **A.      Challenges to Parole Commission Decisions**

9       By the instant action, petitioner seeks to "vacate" a "new sentence" assertedly imposed

10  by the Parole Commission.  (See Petition at 1.)  The Ninth Circuit has held that a petition for a

11  writ of habeas corpus under 28 U.S.C. § 2241, and not a motion to vacate a sentence under

12  28 U.S.C. § 2255, generally is the proper vehicle for obtaining judicial review of Parole

13  Commission decisions.  See Andrino v. United States Board of Parole, 550 F.2d 519, 519

14  (9th Cir. 1977); see also Tyler v. United States, 929 F.2d 451, 453 n. 5 (9th Cir. 1991) (citing

15  Andrino).  Here, petitioner challenges his placement on parole and the Parole Commission's

16  calculation of his remaining sentence.  Because both of these claims concern the amount of

17  time petitioner must remain in custody, see Jones v. Cunningham, 371 U.S. 236, 243 (1963)

18  (holding prisoner placed on parole remains "in custody" for purposes of 28 U.S.C. § 2241),

19  the instant action is more properly construed as a petition for a writ of habeas corpus under §

20  2241 rather than a motion under § 2255.  See Tucker v. Carlson, 925 F.2d 330, 331 (9th Cir.

21  1991) (holding prisoner's challenge of Parole Commission's decision not to credit time

22  served in state custody toward federal sentence should be construed as petition for writ of

23  habeas corpus under 28 U.S.C. § 2241).

24  _____

25      [1] Although not directly relevant to the instant action, the Court notes that on March 26,
    2003, a new criminal complaint was filed against petitioner, charging him with a bank robbery
26  allegedly committed on March 25, 2003.  (See Sikkema Cert. Ex. O.) Petitioner entered a
    guilty plea and, on February 19, 2004, was sentenced to 120 months in custody.  (See United
27  States v. Griffith, Case No. CR-03-0140, Docket Nos. 12, 22.)  Although the record reflects
    that the Parole Commission issued a "hold" on petitioner as a result of the new criminal
28  charge, (see Sikkema Cert. Ex. Q), there is no evidence in the record that petitioner's parole
    was ever revoked as a result of his conviction.

1    Irrespective of how the Court construes the instant action, however, petitioner's claims

2    fail on their merits, as set forth below.

3    **B.    Parole Commission's Alleged Unlawful Imposition of New Sentence**

4    Petitioner claims he earned 3826 days of statutory "good time" credit over the course

5    of his original 25-year sentence, and that, following his reincarceration for violating his

6    mandatory release, the Parole Commission unlawfully converted his good time credit into a

7    "[n]ew 10-year sentence."  (See Reply at 3.)

8    Petitioner misunderstands the Parole Commission's recalculation of his sentence

9    following his reincarceration.  When petitioner was placed on mandatory release in 1999, he

10   had 3826 days remaining on his sentence.  (See Sikkema Decl. Ex. D.)  When petitioner's

11   mandatory release was revoked in 2001, petitioner agreed to forfeit all credit for the time he

12   spent on release, and, accordingly, the unserved portion of his sentence remained at 3826

13   days.[2]  (See id. Ex. I.)  Petitioner was then imprisoned from August 24, 2001 to November 22,

14   2002, a period of 456 days.  (See id.)  On November 22, 2002, petitioner's parole date, the

15   Parole Commission set his parole expiration date at February 13, 2012, for a total term of

16   3370 days.  (See id. Ex. N.)  That term was calculated by subtracting 456 days, the number of

17   days petitioner was incarcerated for violating the terms of his mandatory release, from the

18   3826 days remaining to be served at the time of petitioner's mandatory release.  Thus, the

19   Parole Commission did not impose a "new sentence" upon petitioner, but rather placed him

20   on parole for the remainder of his original sentence.

21   Petitioner next contends that his placement on parole was "an impossibility according

22   to statutory law," and that he should have been placed back on mandatory release.  (See

23   Reply at 3.)  Petitioner misunderstands the statutory scheme.

24   18 U.S.C. § 4163 provides for mandatory release of a prisoner "at the expiration of his

25   term of sentence less the time deducted for good conduct."  See 18 U.S.C. § 4163.  Upon

26   _____

27   [2] The Parole Commission regularly forfeits the "street time" of parole and release
     violators, see 18 U.S.C. § 4213 and 28 C.F.R. § 2.66, and courts have consistently upheld the
     practice.  See e.g. Vanes v. United States Parole Comm'n, 741 F.2d 1197, 1199 (9th Cir.
28   1984) (holding forfeiture of violator's "street time" within discretion of Parole Commission).

4

1    mandatory release, the prisoner is "deemed as if released on parole until the expiration of the

2    maximum term or terms for which he was sentenced less one hundred and eighty days." <u>See</u>

3    18 U.S.C. § 4164; <u>see also</u> <u>Boniface v. Carlson</u>, 881 F.2d 669, 671 (9th Cir. 1989).

4    Accordingly, the Parole Commission retains jurisdiction over a mandatory releasee until 180

5    days before his full term expires, and has the power to revoke a release if its conditions are

6    violated.  <u>See</u> <u>McQuerry v. United States Parole Commission</u>, 961 F.2d 842, 845 (9th Cir.

7    1990); <u>see also</u> 18 U.S.C. § 4210.  A prisoner found to have violated the conditions of his

8    mandatory release may be reincarcerated as a "parole violator."  <u>See</u> <u>Boniface</u>, 881 F.2d at

9    672.

10         When a prisoner is reincarcerated as a parole violator, the good time and work time

11   credits earned during his original incarceration are of no further effect.  <u>See</u> <u>id.</u>  Thus, on the

12   date petitioner was reincarcerated, he had 3826 days remaining on his sentence, and no

13   good time or work time credits applicable thereto.  Because petitioner remains entitled to

14   earn a maximum of 10 good time days per month, the Parole Commission correctly informed

15   him that he was entitled to earn a maximum of 1257 days of good time credits during the

16   remainder of his sentence, and properly set his new mandatory release date at September 4,

17   2008, which is 2113 days from November 22, 2002, the date he was reparoled.[3]  (<u>See</u>

18   Petition, attachments at 3, 5.)  Consequently, petitioner is not entitled to be placed back on

19   mandatory release before September 4, 2008.

20

21        **C.    Deprivation of Good time and Work time Credits**

22         Petitioner further complains he was deprived of "good time" and "work time" credits

23   earned during his original incarceration without due process, and that he has been deprived of

24   120 "good time" credits accrued during his imprisonment for violations of the terms of his

25

26
       _____

27         [3] Petitioner's 3370-day parole term minus 1257 days for good time credits is 2113
     days.  As discussed <u>infra</u>, petitioner is not entitled to the good time credits to which he
28   otherwise would be entitled for the 456-day period of reincarceration.

                                            5

1
2
3

mandatory release.  Petitioner also complains that his case manager notified him that he will not receive good time credits over the remainder of his sentence.  These allegations are not supported by the evidence.

4
5
6
7
8
9
10
11
12

A prisoner is entitled to good time credits if he "faithfully observe[s] the rules" of the institution where he is incarcerated and is not "subjected to punishment . . . ."  See 18 U.S.C. § 4161.  The rates at which good time credits accrue are statutorily prescribed.  See id.  As noted above, a prisoner serving a sentence of 10 years or more may earn up to 10 days of good time credit for each month served.  See id.  If "during the term of imprisonment a prisoner commits any offense or violates the rules of the institution," however, "all or any part of his earned good time may be forfeited."  See 18 U.S.C. § 4165.  "Work time" credit is always discretionary.  See 18 U.S.C. § 4162.

13
14
15
16
17

As noted, when a prisoner violates the conditions of his mandatory release, the good time and work time credits he earned prior to the date of release "no longer exist" and may not be credited to his remaining sentence should he be reincarcerated for violating the conditions of his release.  See Boniface, 881 F.2d at 672.  Consequently, petitioner is not entitled to any of the good time or work time credits he earned during his original imprisonment.

18
19
20
21
22
23
24
25
26
27

 "Upon being sentenced as a parole violator," however, "an inmate begins a new term upon which he is entitled to credit for . . . such good time as he earns during the period of his incarceration as a parole violator."  See id.  Nevertheless, petitioner is entitled to good time credits only if he "faithfully observe[d] the rules" and was not "subjected to punishment" during his imprisonment.  See 18 U.S.C. § 4161.  The record reflects that during petitioner's term of incarceration as a parole violator he was found guilty by a disciplinary hearing officer of insolence towards a staff member in violation of the rules of the institution in which he was incarcerated.  (See Sikkema Decl. Ex. M.)  As a result, it was within the Parole Commission's discretion to forfeit any good time credits petitioner might otherwise have accrued during his term of reincarceration.

28

With respect to petitioner's claim that he has been told that he will not receive good

time credits during the remainder of his sentence, the documents attached to the petition reflect that petitioner was notified by the Bureau of Prisons, in writing, that he is "earning [statutory good time] at the rate of 10 days per month for a total of 1257 SGT possible." (See Petition, attachments at 3.)  Likewise, the sentence computation sheet petitioner has submitted, dated June 17, 2002, states that petitioner is entitled to a "Statutory Good Time Rate" of "10," for a total of "1257" days of good time possible over the remainder of his sentence.  (See id. at 5.)  Thus, the evidence demonstrates that petitioner continues to have the ability to earn statutory good time credits.

### D.    Delay of Parole

Petitioner also complains that, during his incarceration for violating the terms of his mandatory release, the Parole Commission "illegally" delayed his parole date by 90 days. Petitioner signed an "Expedited Revocation Agreement" with the Parole Commission pursuant to 28 C.F.R. § 2.66.  (See Sikkema Decl. Ex. I.)  The agreement states, in part: "I understand that my reparole date is contingent upon my maintaining a record of good conduct in the institution up to the date of release and an acceptable release plan."  (See id.)  The evidence before the Court is undisputed that petitioner refused to submit a revised release plan when his first plan was rejected, resulting in a retardation of his release date by 60 days, (see Sikkema Decl. Ex. L), and that he broke the rules of the institution by displaying "insolence toward a Staff member," resulting in a further retardation of 30 days, (see Sikkema Decl. Ex. M.)  Consequently, it was not unlawful for the Parole Commission to delay petitioner's parole by 90 days.

///

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

For the foregoing reasons, petitioner's motion to vacate his sentence is hereby DENIED.

The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  August 2, 2005

MAXINE M. CHESNEY
United States District Judge

8